**People of the State of Illinois, Plaintiff-Appellee, v. Herbert Lee Smith, Defendant-Appellant.**

**Gen. No. 52,103.**

First District, Second Division.

November 6, 1968.

Rehearing denied December 16, 1968.

Irwin L. Frazin and Howard T. Savage, Starke, Anglin, Savage, Frazin, Stewart & May, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Herbert Lee Smith, was indicted for the crimes of rape and armed robbery. After a bench trial, he was found guilty of rape and not guilty of armed robbery. He was sentenced to a term of 4 to 8 years in the penitentiary. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt, and that the trial court erred in admitting evidence of his escape from police custody.

**Evidence for the State:**

The complainant testified that she lived in the area of 42nd and Prairie in Chicago, with her husband. At approximately 2:30 or 3:30 a. m. on September 11, 1966, while her husband was at work, she was sitting on her front porch with her girl friend. Her girl friend went upstairs, and shortly afterwards, defendant came up to the front porch and asked whether a certain man lived at that address. As the complainant was putting her key in the door to go inside, the defendant put his hand over her mouth and a gun to her head, threatening to kill her if she said anything. She had never seen the defendant before that night. He was wearing a brown jacket, a sweater, dark shirt and no tie, a wide black belt, and had a pair of handcuffs. (She testified that he wore the same sweater in the courtroom during trial.) He forced her to accompany him to a basement in a nearby abandoned building where he made her take off all her clothing except her slip. Holding the gun, he then forced her to lie down on some old boards on the concrete floor and raped her. The defendant interrupted the act to go outside to investigate a noise, and the victim fled, running down the street clad only in her slip. She ran into Albert

Bell, a friend of her husband, who was talking to someone at the corner of 43rd and Prairie. She told him what happened, and after he gave her his sweater, Bell called the police and walked her home. When the police arrived, she described her assailant to them and they went to look for him. They did not return. She had one can of beer during the entire evening. There was a big light on the street in front of her home and another light which they passed on the way to the basement. She suffered scratches on her back from the board, and went to the Michael Reese Hospital clinic two days later because of the pain in her back. About a month later, on October 12, 1966, while she and her mother-in-law were at a neighborhood laundromat, she saw the defendant taking clothes out of a washer. She saw only his face, and did not see what he was wearing. She ran across the street to tell the same Albert Bell who had been present the night of the rape. She then stopped a policeman and told him her story. The policeman entered the laundromat and arrested the defendant.

Albert Bell testified that he had known complainant and her husband for about three years. On the night of the incident, he had just finished work and was standing at the corner talking with a friend, when the complainant ran towards them in her slip, stating that she had been raped. She was screaming and hysterical and looked as though she had been rolling in dirt. He gave her his sweater, attempted to locate the defendant, and then called the police. The police arrived and wrote down the information. He then went home, stating that he did not take the victim to her home.

Officer Anthony Palmsone of the Chicago Police Department testified that on October 12, 1966, the complaining witness approached him, stating that she had just seen the man who had raped her a few weeks previously. He testified that she told him that the man was wearing a black wide belt and was carrying handcuffs. He ar-

rested defendant who had a black belt, an ammunition carrier and a pair of handcuffs. Defendant denied any knowledge of the crime. No lineup was conducted, but the plaintiff positively identified the defendant as the man who had raped her. The officer testified that there was no police report regarding the rape.

Over objection of defendant, Officer Charles Burns of the Chicago Police Department testified that on October 13, 1966, he was assigned to transfer prisoners to the Criminal Courts building. While taking the men to the fourth floor, he saw one of the prisoners bolt to the side. As he apprehended that prisoner, defendant fled down the hallway and escaped.

Officer Augustus Lett of the Chicago Police Department testified that he was notified of defendant's escape and was stationed outside of defendant's home. On the day of the escape, he saw defendant, asked his name and was told it was Bobby Smith. Since defendant fit the description which had been given, he placed him under arrest, and Officer Burns later identified him at the police station. Defendant did not attempt to fight or resist arrest.

### Evidence for the Defense:

Douglas L. White, Emma Tunstill and Louis Cunningham, friends of defendant, testified that they were with him on the night of the rape. In substance, they testified that several people including themselves and defendant, were drinking at two taverns from Saturday evening, September 10, until about 5:00 a. m. Sunday morning.

Defendant, a guard at the projects, testified that he did not work on the day of the occurrence; that he had had never seen the complainant prior to the time of his arrest; and that he was drinking with the people who testified on his behalf on the evening in question. On October 12, 1966, while in the laundromat, his belt car-

138

tridge holder and handcuffs fell out of his laundry. The complainant asked him if he knew her and he replied that he did not. A few moments later he was arrested by the police officer. He left the court building after his arrest because he was afraid of being convicted of a crime he had not committed.

Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because of the discrepancies in the State's evidence. We do not agree. Specifically, defendant argues that there were nine discrepancies or weaknesses in the State's evidence. We cannot attach the magnitude to the discrepancies in the State's case that defendant does, and we find that many of the apparent conflicts in the testimony can be resolved easily.

█ Defendant first argues that the accuracy of the victim's identification is in doubt since she was hysterical on the night of the occurrence and did not see defendant until a month later. However, the victim had ample opportunity to observe her assailant. First observing him on her front porch, she testified that there was a large light in front of her home and another on the route that they took to the basement. She was with him for some time, and he made no attempt to conceal his identification. While any woman would be hysterical after such an experience, the victim recalled in detail what had occurred and also the identification of the assailant. There was no indication that her emotional reaction prevented her from being an observant witness. The fact that she did not see the assailant for a month was a factor to be considered by the trier of fact, but did not render the positive identification unsatisfactory.

█ In questioning the accuracy of the complainant's identification, defendant cites People v. Gardner, 35 Ill2d 564, 221 NE2d 232 (1966). This was also a case involving rape and the court stated:

"Although it is true that the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though it is contradicted by the accused, (citations omitted) in this case the identification of the defendant by the complaining witness was weakened by several factors, while the defendant's alibi was positive and unimpeached."

In that case the complainant was raped in the dark, and her descriptions of defendant were vague and contradictory. In the case at bar, the victim had an excellent opportunity to observe the defendant, and made a positive identification. We do not agree with defendant that her identification was doubtful, vague or uncertain. And, as stated in Gardner, supra, a positive identification by one witness with sufficient opportunity to observe the defendant is enough to sustain a conviction. People v. Mack, 25 Ill2d 416, 185 NE2d 154 (1962); People v. Upshaw, 58 Ill App2d 256, 207 NE2d 728 (1965).

Defendant next urges that it was a strange coincidence that Albert Bell was present both on the night of the rape and again at the time of the identification and arrest of defendant. We see nothing strange about it. The victim and Bell were neighbors, and there was nothing unusual about their frequency of contact; rather, such frequency would seem to be normal among neighbors. Indeed, Bell's unimpeached testimony that she made an immediate outcry, was wearing only a slip and was excited and nervous was strong corroboration that the victim had been raped. People v. Finley, 22 Ill2d 525, 177 NE2d 149 (1961).

The fact that no police report was made by the police officers who were called on the night of the occurrence was explained by Officer Palmsone. He testified that the police who gave chase to the rapist evidently were unable to find the complainant upon their return, and so made no report.

The complainant did not go to a doctor or hospital for an examination of any kind until two days later, and then she went to a clinic because of a pain in her back. She testified that except for a few scratches, she was not injured and felt no pain. Her failure to seek immediate medical assistance is understandable in light of the surrounding circumstances.

Defendant next points out that the complainant testified that when she saw defendant at the laundromat, she saw only his face, while the arresting officer testified that in describing defendant, the victim said that the defendant was wearing a wide belt and handcuffs. However, an examination of her testimony reveals that she testified she told the policeman: "I says, 'I know him alright, I don't forget. I haven't forgotten his face. If I am right he has a black, wide belt on with a silver buckle and a pair of handcuffs.'" Thus it can be seen how the officer could have misunderstood her remarks and thought that she had stated that the defendant was wearing the belt and handcuffs in the laundromat.

At trial, the victim testified that her girl friend went upstairs with her husband, and at a preliminary hearing testified that her friend went upstairs to get her cigarettes. While there is nothing inconsistent or conflicting in those statements, even if considered a discrepancy, such testimony would have no relevance to the charge of rape.

Defendant further argues that the victim testified at trial that she was raped in a basement, while before the grand jury, she stated that ". . . he went down *into the basement but he did not go inside* (emphasis added) because it was all boarded up, . . . ." Obviously while the choice of expression was not perfect, there was no contradiction in this testimony.

██ Defendant also cites two contradictions in the State's testimony which cannot be reconciled. The victim testified that Bell walked her home on the night of the occurrence and they met the police in front of her home.

141

Bell testified that he did not walk her home, and the police came to the corner where he was standing. She also testified that Bell told her on the night of the occurrence that the rapist probably worked as a project guard, while Bell testified that he told her this on the night that defendant was arrested. These contradictions are minor, and did not greatly affect the credibility of the State's witnesses. This court has previously stated:

> "A contradiction in the testimony of a witness does not render his testimony nugatory, but goes to the weight and credibility of his testimony." City of Chicago v. Carney, 34 Ill App2d 303, 180 NE2d 729 (1962).

Trial commenced about three months after the arrest; surely, some of the secondary events would be blurred by the passage of time. The minor discrepancies do not, as a matter of law, affect the credibility of the State's witnesses. See People v. Clay, 27 Ill2d 27, 187 NE2d 719 (1963).

As our Supreme Court has stated:

> "Where the evidence is merely conflicting, this court will not substitute its judgment for that of the jury, and this rule applies to contradictory evidence on alibi." People v. Rawls, 389 Ill 110, 113, 58 NE2d 895 (1945).

In the instant case, the trial judge had the opportunity to determine the credibility of all of the witnesses and observe their conduct and demeanor. He chose to believe the victim and the corroborating testimony of Bell rather than the defendant and his alibi witnesses. We see no reason to disturb the conclusions of the trial judge, and we find that the defendant was proved guilty beyond a reasonable doubt.

Defendant's next contention is that evidence of his escape from police custody was improperly admitted.

While conceding that People v. Talbe, 321 Ill 80, 151 NE 529 (1926) stands for the proposition that evidence of an escape from custody after arrest is admissible in evidence, defendant urges that we find that the trial judge erred in admittting testimony regarding the escape since such evidence established the commission of another crime for which he was not on trial.

However, our Supreme Court has recently affirmed the principle that testimony regarding an escape from custody, though showing the commission of another offense, is admissible as evidence tending to prove guilt and is to be considered together with all other evidence in the case. People v. Harper, 36 Ill2d 398, 223 NE2d 841 (1967); People v. Gambino, 12 Ill2d 29, 145 NE2d 42 (1957).

Accordingly, the trial judge did not err in allowing evidence of the escape from police custody.

For the foregoing reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.