THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND F. TERRELL, Defendant-Appellant.

(No. 57616;

First District (5th Division)—March 29, 1974.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, and Frank DeBoni, Senior Law Student, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After a jury trial, defendant was found guilty of the murder of James Lewis in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1) and was sentenced to a term of not less than 14 nor more than 18 years. On appeal he contends: (1) that the trial judge erred in failing to require the production of a material witness to defendant's confession alleged to have been coerced; (2) that the evidence failed to prove him guilty beyond a reasonable doubt; and (3) that the prosecutor's closing argument was so highly inflammatory and prejudicial as to deny him a fair and impartial trial.

James Lewis, Paul Knox and Lee Davis were playing basketball in the playground adjacent to the Eisenhower School at 137th Street and Crawford Avenue, Robbins, Illinois, on April 18, 1971, when at approximately 8 P.M. they were confronted by a group of youths that had encircled the playground. Lewis was shot in the right thigh causing severe hemorrhaging. Knox was struck in the head by a chain. Lewis was taken to the hospital where he was pronounced dead. Later that night Knox gave the police a statement identifying Jarvis Carter as one member of the group that had surrounded the playground. Davis also gave the police a statement identifying Sherman Brown and Lorenzo Brown as well as Carter. Davis indicated that he believed that it was Lorenzo Brown who had fired the shot that struck Lewis. Davis further stated that immediately before the shots were fired Lorenzo Brown had shouted "Halt or I will shoot."

The following morning an informant told Robbins Police Sergeant Melvin Jessup that he had heard that defendant had shot Lewis. Jessup at this time was unaware of Davis' implication of Lorenzo Brown. Robbins Police Sergeants Oscar Murphy, Frederick Pennix and Jessup went to defendant's house to bring him to the Robbins police station for questioning. As defendant was taken to the police car he was advised of his constitutional rights. He indicated that he knew of the shooting incident and where the gun was hidden. He directed the officers to Stanley Howell's house where a .38-caliber pistol was recovered from behind a heating duct in the basement. Later that same day defendant signed two written confessions. The first was taken by Jessup and Murphy at the police station and the second at the State's Attorney's office by

assistant State's Attorney Lawrence O'Gara in the presence of Sheriff's police officers Robert Cadieux and Vic Maiorano. No pretrial motions were made to suppress either of the confessions.

At trial, Jarvis Carter testified for the State that on the night in question he, defendant, defendants' brother Michael, Bruce Hawkins and Stanley Howell went to the school to make a peace treaty between the "Lords" and the "Stones." Hawkins, Howell and defendant walked across the field toward the basketball court and he and Michael started walking around the school to encircle the basketball court from the other side when he heard someone say "Halt or I shoot." He saw Paul Knox running at him with what appeared to be a gun. The witness threw a chain he was holding and hit Knox in the face. He heard two shots and then saw defendant running. He did not see anything in defendant's hand or on his person. The State claimed surprise on the basis of Carter's four-page statement previously given to the police. After having been examined as a court's witness, he testified that defendant had a gun in his hand, that he saw him shoot "the dude by the basketball court" but that he didn't know "the dude's name" that was shot. The witness further testified that he had given defendant a loaded gun at about 10 o'clock that morning.

Jessup testified for the State that defendant's first confession taken at the police station was made voluntarily and only after defendant had been admonished of his constitutional rights. O'Gara testified that defendant's second confession at the State's Attorney's office was voluntary and was given after defendant had been advised of his constitutional rights. Cadieux and Maiorano corroborated O'Gara's testimony. This confession was read to the jury and offered into evidence.

Defendant testified in his own behalf that Sergeant Murphy had said to him that his younger brother would go to jail unless he confessed to shooting James Lewis. Defendant denied that he had been advised of his constitutional rights prior to giving a statement to Jessup. He testified that he signed a waiver of such rights without having read the waiver. He further testified that Murphy directed his answers to Jessup's questions. He acknowledged having made a statement at the State's Attorney's office, but denied its truthfulness. Defendant testified that on the night of the shooting he and his girl friend had been walking to the school adjacent to the playground to go to a dance. When they heard shots being fired, they hid close to the building for about 3 to 4 minutes and then ran for home. On cross-examination, defendant admitted that his girl friend had moved out of state and further that there had been no dance that night.

Defendant's request to call Officer Murphy as a court witness material

to the question of coercion regarding the first confession was denied.

During closing arguments the prosecutor, over objections from defense counsel, characterized defendant in an insulting manner and dwelled on the outrageous nature of the crime and spoke of each juror's duty to the people of Illinois. After deliberations, the jury returned a verdict of guilty.

OPINION

Defendant now contends that the court erred in permitting the second confession to be received into evidence. He argues that the second confession at the State's Attorney's office was merely a product of the coercive tactics employed by the Robbins police in extracting his first confession. Although defendant concedes that there has been only his allegation of coercion, he argues that once having made that allegation, it was incumbent on the court to hear testimony from all material witnesses to the earlier confession so that the full truth could be disclosed. He notes that Sergeant Murphy, a witness to the first confession, did not testify.

■ It is the duty of the trial judge in every case when he has reason to suspect that a confession has been obtained through coercive measures, to refuse to permit any evidence as to the confession until the full truth of the method of its obtainment is disclosed. (*See People v. Rogers,* 303 Ill. 578, 136 N.E. 470.) Nevertheless, this is not a mechanical formula that requires every witness to the confession to testify but rather a practical one to assist the court in determining whether or not the confession is voluntary. (*See People v. Jennings,* 11 Ill.2d 610, 144 N.E.2d 612.) Whether an absent witness to a confession could be of substantial value in resolving the question of voluntariness of a confession must be weighed by the trial judge against the credibility of testimony already elicited from other witnesses. "If, in order to satisfy himself of the competency of a confession, he requires all of the material witnesses to be called, he should do so. On the other hand, if he were satisfied to hear less than all of such witnesses, that also should be within his discretionary power, and we should reverse only where we are satisfied that there was a clear abuse of discretion." *People v. Sims,* 21 Ill.2d 425, 434, 173 N.E.2d 494, 498 (specially concurring opinion).

Here the only evidence that coercive tactics were employed by the Robbins police force consisted solely of defendant's testimony at trial. He testified that Murphy said to him that the "only way you can get your brother out [*sic*] if you make a statement or say you did it." Murphy then allegedly told Jessup what to write down, and told defendant to sign it. Defendant further testified that he merely reiterated these sup-

plied answers when questioned at the State's Attorney's office later that same day. Defendant's account of the collateral circumstances surrounding his confession is controverted by Jessup's testimony. Furthermore, defendant offers no explanation as to why he feared that his brother could be implicated in the crime. Also, defendant's testimony directly conflicts with the testimony of his friend Carter. Under the circumstances we believe the trial judge was in a position to view the demeanor of the witnesses, and was satisfied that the confession was not coerced.

■■ Defendant cites the recent decision of *People v. Armstrong*, 51 Ill. 2d 471, 282 N.E.2d 712, for the hard and fast rule that all material witnesses to a coerced confession must be called. In that case the following elements were present. First, the voluntariness of the confession was called into question by a motion to suppress; secondly, defendant's allegation of physical coercion was corroborated by four other defense witnesses; and thirdly, the absence at the hearing of police officers who had witnessed the confession was not explained away by the prosecutor. In the instant case, the allegedly coerced confession was not called into question by a motion to suppress, but rather was raised by defendant's testimony at trial after the trial judge had the opportunity to evaluate the evidence. Also, as has been previously noted, defendant's testimony was uncorroborated and was contrary to other State's witnesses. Finally, there was no attempt by the State to secrete Murphy as he was available in the courtroom during much of the proceedings and was on the State's list of witnesses. In fact, the prosecutor did call Murphy to the witness stand, but he was momentarily absent. He was never recalled because the State felt his testimony would be merely cumulative. We conclude that *Armstrong* is distinguishable on its facts.

■■ Defendant's contention that he was not proven guilty beyond a reasonable doubt is likewise without merit. It is the jury's province to determine the guilt or innocence of an accused and its verdict will not be set aside on review unless so unsatisfactory as to leave a reasonable doubt of guilt. (*People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840.) Where the evidence is merely conflicting, this court will not substitute its judgment for that of the jury or the trial court. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631.) Defendant's confession admits that he walked to the playground on the night in question with Carter, Stanley Howell and Bruce Hawkins, that he saw two youths on the court, that Carter hit one youth in the face with a chain, that he then fired his pistol twice, hitting the other person. Carter's testimony at trial corroborates these events. Defendant's subsequent repudiation of that confession and his alibi testimony, taken together with inconsistencies in

Carter's testimony, were properly resolved by the jury in rendering their verdict. We do not find the evidence so unsatisfactory as to leave a reasonable doubt as to defendant's guilt.

Defendant's final contention is that the prosecutor's closing argument was inflammatory and prejudicial, and thereby denied defendant a fair and impartial jury. Objection is made to portions of the prosecutor's argument wherein he commented on the Christmas season, labeled defendant a "maniac" and a "punk" and continually exhorted the jury in rather strong language to convict defendant of murder.

■■ Improper remarks will not constitute reversible error unless substantial prejudice results. (*People v. McCorry*, 51 Ill.2d 343, 282 N.E.2d 425; *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432.) While the prosecutor's remarks exceeded the bounds of propriety, they were not of such magnitude as to constitute prejudicial error so as to deprive defendant of a fair trial. "Considering the comments made in light of the evidence of guilt presented by the prosecution it cannot be said that they represented a material factor in the conviction and that the verdict would have been different had the comments been unsaid." *People v. Nicholls*, 42 Ill. 2d 91, 245 N.E.2d 771.

Accordingly, the judgment is affirmed.

Affirmed.

SULLIVAN, P. J., and DRUCKER, J., concur.