THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT GREEN, Defendant-Appellant.

Third District  No. 75-128

Opinion filed May 12, 1976.

Robert Agostinelli and Verlin Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (Thomas E. Cowgill, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Robert Green appeals from a conviction in the Circuit Court of Will County of deviate sexual assault on which he was sentenced to a

prison term of 4 to 12 years (Ill. Rev. Stat. 1975, ch. 38, §11—3). The conviction resulted from a bench trial.

On appeal in this court, defendant Green contends that the State's evidence, particularly the testimony of the complaining witness, was so improbable, incredible and lacking corroboration as to raise a reasonable doubt as to his guilt. At the trial before the judge, defendant did not contest the allegation that he caused the victim to perform fellatio upon him and to submit to cunnilingus. He rather contends that she had consented to those acts.

■■ The trial court concluded that consent is a defense to a charge of deviate sexual assault (unlike indecent liberties with a minor, Ill. Rev. Stat., 1975, ch. 38, §11—4), since the crime is one of force as is rape (ch. 38, §11—1), to which consent is a defense. The issue as presented to us, was whether the acts of deviate sexual conduct were committed by force, in which case they would constitute the crime of deviate sexual assault, or whether the acts were with the victim's consent, in which case the specific crime charged would not have been committed.

The trial court sitting as the trier of fact heard the testimony of defendant and of 12-year-old Darceia Greene (no relation to the defendant), who was the complaining witness, and resolved the conflicts and credibility in favor of the young girl in finding the defendant guilty.

Darceia testified that she had seen defendant twice before the incident but did not know his name and had not spoken to him. She said that she went to bed around 12:30 a.m. on August 6, 1974, after watching television with her younger brother and sister. The three children went to bed in the same room with the younger two sharing a bed three or four feet from the one used by Darceia. The children's mother also slept upstairs in a room adjacent to the room in which the children slept.

The complaining witness said that she awoke at 3:30 a.m. to find a hand covering her mouth. She turned and saw defendant holding a hammer and screwdriver in his other hand, telling her to keep quiet. He proceeded to pull down the covers and then her pajama bottoms, after laying down the tools near her head. When she complained he threatened to hurt her.

Darceia testified that Green then ordered her onto the floor between the two beds and placed the tools on the floor by her head. He pulled down his own pants and sat astride her, facing her feet, and began to perform cunnilingus. After a few minutes, during which time he removed the tools to a place near her feet, he ordered her to perform fellatio on him.

Darceia said that she had been coached by her mother in the art of resisting unwanted sexual advances and she bit defendant's penis almost as soon as it was in her mouth. She also screamed, and her sister awoke and screamed. Defendant fled, bumped into Mrs. Greene in the hallway outside the room, and then ran downstairs and out of the house. Darceia

estimated the entire incident lasted 10 to 15 minutes. She and her mother and sister testified that the hammer was kept in a kitchen drawer but the screwdriver was not familiar to them.

Darceia's 10-year-old sister, Sharcene, awoke to her sister's screams and saw a man pull up his pants and run from the room and noticed that her sister had no pajama bottoms on, and also saw the hammer and screwdriver on the floor near the head of the bed. The mother of Darceia said she had made sure the doors were locked before going to bed but said the window in the back door had a broken latch and couldn't be locked. She testified that after the screams and her run-in with defendant in the hall, she called police and investigated downstairs. She found a closet door under the stairs open and the contents of a purse, which had been in the closet, spilled on the floor. A kitchen drawer was open and a pair of men's sandals were on the dining room table.

There were no signs of forced entry, but one detective testified that many locks of the character involved could be opened with a skeleton key or a plasic credit card and that many burglaries in the past had been committed in this manner. He said that the lock on the front door of the Greene home could be sprung with a piece of plastic or wire. Apparently Darceia had been at a neighbor's home at a time when defendant was visiting in that area and, also, was seen by defendant when he was at his sister's house across the street from the Greene residence.

In defense, defendant testifed that he was going to his sister's house around 2:30 in the morning on August 6 with a screwdriver in his pocket for self-protection. He said he heard someone call out to him and saw Darceia yelling at him from the house. He went over and chatted for a moment. She then invited him into the house and they sat in this dining room. She sat on his leg at his request and began fondling his penis. She told him she was 16 years old and no longer a virgin. He stated that with her consent he unbuttoned her pajama top and began kissing her breasts. After some 10 minutes she went upstairs and shortly thereafter invited him up to the bedroom. Once there he said he removed her pajama bottoms at her request, resumed kissing her breasts and eventually began cunnilingus. After some 15 minutes she began to perform fellatio upon him and then proposed sex "the other way," which he understood to mean sexual intercourse. He refused, she became angry and began screaming and he ran out of the house.

Defendant admitted leaving his shoes on the table and said he also left the screwdriver behind. He claimed he did not run into Mrs. Greene in his hasty exit and said, as to the hammer, that he noticed it in the bedroom when he first entered.

As stated in *People v. Litberg* (1952), 413 Ill. 132, 138-39, 108 N.E.2d 468:

"The law has committed to the trial judge, where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and of the weight to be given to their testimony. * * * On review, this court will not disturb a finding of guilt unless it is palpably contrary to the weight of the evidence or is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of a defendant's guilt."

See also: *People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288; *People v. Montgomery* (1st Dist. 1974), 19 Ill. App. 3d 206, 211, 311 N.E.2d 361.

■■ ■ Despite certain discrepancies and contradictions in the testimony of Darceia and the other State witnesses, which seemed to be relatively minor and not necessarily destructive of the credibility of the witnesses, we conclude that the evidence was sufficient to support the conviction. (*People v. Smith* (1st Dist. 1968), 102 Ill. App. 2d 134, 142, 243 N.E.2d 286; *People v. Reese* (1973), 54 Ill. 2d at 57-58.) While the lack of evidence of forcible entry into the Greene house could indicate that Darceia did in fact let the defendant in as he claims, there was also testimony that the locks could have been picked or entrance gained through the back window. Also, unlikely as it may seem, the activities related by the complaining witness could have been carried on in bright light for over 10 minutes without waking the brother and sister and, even by defendant's own account, there was some 15 minutes of such activity within the same proximity of the sleeping children. Defendant was 6'2" and 185 pounds and would be an imposing figure to a 12-year-old girl. Resistance is not required where it would be futile or where the victim is reasonably afraid of harm to herself or others (such as her brother and sister). (*People v. Montgomery* (1st Dist. 1974), 19 Ill. App. 3d at 210; *People v. Smith*, 32 Ill. 2d 88, 92, 203 N.E.2d 879 (1965); *People v. Ware* (1st Dist. 1973), 11 Ill. App. 3d 697, 700-701, 297 N.E.2d 289.) We note that here the victim eventually did resist and frighten the defendant so that he left hurriedly.

It is also notable that Darceia testified that defendant approached her with a hammer and screwdriver in hand and left them on the floor where they were seen by the other witnesses. Defendant accounted for the presence of the hammer by saying he noticed it on a dresser when he entered the bedroom. The location of the hammer on the floor with the screwdriver, which was verified by the sister and mother of the victim and the investigating officers, is a factor corroborating the story of the victim and inconsistent with defendant's version.

While the case involves a conflict of fact, the resolution was one to be made by the trial court, who sat as a trier of fact to weigh the evidence and evaluate the credibility of the witnesses. The determination of the trial court was clearly not against the manifest weight of the evidence.

Accordingly, the judgment of the Circuit Court of Will County should be, and is, affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.