THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ADAM CUKOJEVIC, Defendant-Appellant.

First District (2nd Division)    No. 80-2258

Opinion filed December 29, 1981.

Michael D. Monico, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and John M. Steed, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, Adam Cukojevic, was charged with one count of armed robbery and one count of deviate sexual assault. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—2 and 11—3.) After a jury trial, defendant was found ·guilty as charged. The court entered judgment on each verdict and sentenced defendant to eight years in the Illinois Department of Corrections.

On appeal defendant contends that: (1) the State did not prove beyond a reasonable doubt defendant's guilt of armed robbery and deviate sexual assault; (2) the trial court erred in denying ·defendant's motion to suppress statements which he purportedly made while in police custody; and (3) comments made by the prosecutor and the trial court

during closing argument were so prejudicial as to deny defendant his due process right to a fair trial.

For the reasons set forth herein, we affirm the convictions of defendant.

At trial the victim testified to the events that occurred on Sunday, October 28, 1979. The victim stated that at approximately 5:30 p.m. on the day in question she was standing in a laundromat located on the corner of Montrose and Wolcott in Chicago, Illinois. She was 20 years old at the time and resided in an apartment at 4313 North Wolcott, approximately one-half block from the laundromat.

The victim noticed that there was a man sitting in a car parked on Wolcott, directly outside the laundromat, watching her. She left the laundromat after making a phone call and began walking south on Wolcott toward her apartment. She noticed that the same man who had been watching her earlier was now beckoning to her from his car. This man was later identified by her as defendant.

Defendant motioned to the victim to walk over to his car. She approached the car but remained on the sidewalk. Defendant remained in his car. He asked her if she would like to "have a drink with him," but she declined. He then asked her if she wanted a ride home and she again declined.

When the victim turned to walk away, defendant suddenly walked up behind her and "grabbed" her arm. Holding a broken bottle in one hand, he forced her into his car. She tried to pull away, but defendant's grip on her was too strong. Although she was "very scared," she did not scream because she saw that there was no one else on the street.

Once inside the car, defendant told the victim "not to try anything stupid or scream." She reached for the door handle on the passenger side of the car and discovered that it was locked. Defendant again warned her, "don't try to get out of the car, don't be stupid."

Defendant drove toward the lakefront. While in the car, the victim looked for a "police car or someone who would definitely help her." She did not see any police officers. Defendant repeatedly warned her not to scream or attempt to escape.

Near the lakefront on Wilson Drive defendant drove toward a bridge. Several men were standing on the other side of the bridge and when defendant saw these men he made a "U-turn" in his car and drove into a parking lot on Marine Drive. The area was well lit. Approximately a minute later defendant drove out of the parking lot. Throughout this time defendant was holding the broken bottle.

Defendant drove west and pulled into another parking lot. This lot was dark and secluded, and he parked there. Defendant then put his right

arm around the victim's shoulder. He held the broken bottle in his right hand "right next" to the victim's throat and tried to kiss her. She resisted and tried to push him away, but he increased the pressure of the bottle against her throat. She did not suffer any scratches or bruises.

The victim was shaking. Defendant warned her not to scream. She begged him to take the bottle away from her throat, and he put the bottle in his left hand. He then began to caress her and ordered her to undress. He told her to touch his penis. When she refused his command, he grabbed her hand and placed it there. She told him she could not have intercourse with him because she was menstruating. Defendant said he "didn't care."

Defendant then ordered the victim to "suck him." She resisted and he forced her to perform fellatio upon him. Throughout this incident defendant held the broken bottle in his left hand.

At this point another person drove into the alley behind the parking lot. Defendant told the victim to "leave her purse" and "get out of his car." She told him that she needed her identification and her keys. He told her to "give him [her] money and to get out of his car." She gave him $17.

The victim then exited defendant's car, and as he was driving away she observed his license plate number. (At trial defendant admitted to owning the plate number that the victim had observed.) The victim then ran to a man who was parking his car nearby. When she requested help from him, he took her into a building in which the desk clerk phoned the police.

Officer Russell Mueller, a Chicago police officer assigned to the 20th District, responded to the call reporting the robbery and assault. After arriving at the scene, Mueller conversed with the victim. At trial Mueller testified that he believed that at the time of their initial conversation the victim made a statement to the effect that defendant had produced a broken bottle and ordered her into his car. The victim also told Mueller that she was the victim of a deviate sexual assault and a robbery.

Defendant testified to the following: On October 28, 1979, at approximately 5 p.m., he was alone in his car driving eastbound on Montrose Avenue toward Lake Michigan. At that time he noticed the complainant standing near a laundromat. He "slowed down" and he and the complainant exchanged glances. They had a brief conversation during which she inquired about purchasing marijuana. Defendant agreed to drive the complainant to the lakefront where they could purchase the drug. While driving to the lakefront, they talked, and the complainant told defendant that she had a boyfriend who was a musician.

When they reached the lakefront, the complainant purchased from a group of male Latinos four marijuana cigarettes. They smoked several of

the cigarettes and then drove to a parking lot near the lakefront where they continued smoking. While parked in defendant's car, defendant and the complainant began kissing and fondling each other. They then had oral sex.

Shortly thereafter defendant told complainant that he had recently moved from his parents' home and that he had no money. The complainant became angry, swore at defendant and "threw" money at him. She then exited defendant's car, "slammed" the door and left the scene.

Defendant was arrested on January 13, 1980. Assistant State's Attorney Ira Raphaelson testified that while in police custody following his arrest, defendant admitted that he had robbed the complainant.

The jury found defendant guilty of one count of armed robbery and one count of deviate sexual assault.

## I

Defendant contends that he was not proved guilty beyond a reasonable doubt because the victim's testimony was rendered incredible by her failure to attempt an escape or to cry out for help, and by the fact that she did not suffer any cuts or bruises. Defendant argues that the victim had the opportunity to attempt an escape or to cry out for help when defendant had to stop at several busy intersections on the way to the lakefront. Defendant also asserts that the absence of physical injury to the victim underscores the defendant's testimony that no act of armed robbery or deviate sexual assault was perpetrated by force and against the will of the victim.

The State maintains that the clear and convincing testimony of the victim, corroborated by defendant's admission that he robbed her, clearly establishes that defendant was proved guilty of armed robbery and deviate seuxal assault.

■■ It is the province of the jury to weigh the evidence, judge the credibility of the witnesses and determine the facts. A court of review "will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused." *People v. Sumner* (1969), 43 Ill. 2d 228, 232, 252 N.E.2d 534; *People v. Payton* (1980), 84 Ill. App. 3d 181, 184, 405 N.E.2d 18.

■■■ A material element of the offense of deviate sexual assault (Ill. Rev. Stat. 1977, ch. 38, par. 11—3) is force or the threat of force. The nature of the force or threat of force which must be proved in a deviate sexual assault case is the same as that for rape. (*People v. Anderson* (1979), 20 Ill. App. 3d 840, 314 N.E.2d 651; *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865.) In rape cases "[t]here is no definite standard fixing the

amount of *force* required and each case must be considered on its own facts." (Emphasis added.) (*People v. Smith* (1965), 32 Ill. 2d 88, 92, 203 N.E.2d 879.) Likewise, in determining the degree of *resistance* required of a victim of deviate sexual assault, each case must be considered on its own facts. (*People v. Bendig* (1968), 91 Ill. App. 2d 337, 235 N.E.2d 284.) Useless or foolhardy resistance is not necessary. (*People v. Green* (1976), 38 Ill. App. 3d 289, 347 N.E.2d 224; *People v. Robinson* (1977), 52 Ill. App. 3d 658, 662, 367 N.E.2d 1034, *aff'd* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) There is no duty to cry out for aid where the defendant has a deadly weapon. *People v. Garriott* (1974), 20 Ill. App. 3d 994, 1000, 313 N.E.2d 189.

■■ The testimony of the victim in the case at bar was clear and convincing. It has been held that the testimony of a single credible witness is sufficient to support a conviction for a sexual offense, even though such testimony conflicts with the testimony of the accused. *People v. Sweeney* (1977), 46 Ill. App. 3d 858, 865, 361 N.E.2d 344.

■■ The facts in the instant case demonstrate that the victim was clearly in a disadvantageous position so that an attempt to escape or a cry for help would not only have been futile but foolhardy. Such action is not required. Under the circumstances, where the defendant apparently was brandishing a deadly weapon, the victim's actions in not attempting to cry out or escape do not belie her testimony as to how the incident occurred. Nor does the fact that she sustained no physical injury imply that she consented to defendant's actions. See *People v. Jones* (1976), 40 Ill. App. 3d 850, 858, 353 N.E.2d 375; *People v. Ware* (1973), 11 Ill. App. 3d 697, 701, 297 N.E.2d 289.

■■ In addition, the testimony of the victim was corroborated by the fact that she phoned the police within minutes after the defendant allegedly abused and robbed her. Such "prompt complaint" is a well-recognized form of corroboration in cases involving sexual attacks. *People v. DeFrates* (1946), 395 Ill. 439, 70 N.E.2d 591, *cert. denied* (1947), 331 U.S. 811, 91 L. Ed. 1831, 67 S. Ct. 1201; *People v. Walsh* (1980), 80 Ill. App. 3d 754, 765, 400 N.E.2d 587.

■■ From the clear testimony of the victim, coupled with defendant's admission to Assistant State's Attorney Raphaelson that he robbed her, we conclude that the evidence is not so palpably contrary to the verdict, nor so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to the guilt of defendant.

## II

Defendant next contends that the trial court erred in denying his motion to suppress statements which were purportedly made by him

while he was in police custody after his arrest. The statement allegedly made by defendant and admitted into evidence at trial was a confession to the armed robbery charge: "I did not stick a bottle to her throat and force her to suck me off. I just robbed her."

The day before trial defendant filed a motion to suppress the confession. The prosecutor moved to strike defendant's motion because in it defendant had not alleged any specific acts by which the State had coerced such confession.

The trial court allowed defendant to amend his motion to suppress. In such amendment defendant stated that he was physically coerced into confessing because he was handcuffed for an extended period of time, but he did not name any persons who allegedly coerced him.

At the pretrial hearing on the suppression motion the State presented three witnesses: Officer Raymond Krull, Investigator Robert Richards and Assistant State's Attorney Ira Raphaelson. Officer Krull and his partner, Officer Edward Stromberg, were the arresting officers. They transported the defendant from his home to the Area 6 police station. Officer Krull testified that the only conversation he and Officer Stromberg had with defendant was to inform him of their destination. They never struck or abused defendant. When they arrived at Area 6, they took defendant to a second floor interrogation room and handcuffed him to a wall. Several minutes later Investigator Richards arrived. He advised defendant of his constitutional rights.

Investigator Richards testified that while he was in the interrogation room, no one struck the defendant or promised defendant leniency if he would confess. Richards stated that he was not present when defendant made his alleged confession to Assistant State's Attorney Raphaelson and Investigator Kay Lewis.

Assistant State's Attorney Raphaelson testified that defendant was not handcuffed when Raphaelson spoke to him. Raphaelson advised defendant of his constitutional rights. Defendant did not complain of any physical deprivation. Raphaelson made no promises to defendant.

Raphaelson stated that Investigator Lewis, the police officer who was present during defendant's alleged confession, was not in the interrogation room when Raphaelson arrived. Lewis entered the room with Raphaelson and left with him at the conclusion of the interview with defendant. It was during this interview that Raphaelson heard defendant say " * * * I just robbed her."

Defendant, at the pretrial hearing, sought to call Investigator Lewis to testify. The trial court stated that it had been informed that Lewis was at home with a broken leg, and that her doctor had specifically ordered that she could not be moved. The trial court noted that her police report and all prior testimony relating to such report were contained in doc-

uments which defendant had in his possession, and those documents had been received in evidence on defendant's motion.[1]

Defendant made no further arguments and produced no witnesses in his own behalf. The trial court denied defendant's motion to suppress his confession.

In a pretrial hearing on a motion to suppress, the credibility of the State's witnesses and the weight to be given to their testimony are questions for the trial court, and a court of review will not disturb the trial court's determination as to the voluntariness of defendant's statement absent a showing that such determination is contrary to the manifest weight of the evidence. *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 161-62, 376 N.E.2d 33.

■■■ Whether a statement is voluntarily given depends upon the totality of the surrounding circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) The voluntariness of a confession must be proven by a preponderance of the evidence. (*Lego v. Twomey* (1972), 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619; *People v. Jackson* (1968), 41 Ill. 2d 102, 109, 242 N.E.2d 160; *People v. Sizemore* (1981), 97 Ill. App. 3d 1088, 1096, 423 N.E.2d 1264.) When the State has made a *prima facie* showing that a confession was voluntary, the burden shifts to the defense to produce evidence that the confession was involuntary and reverts back to the State only upon such production by the defense. *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 161-62, 376 N.E.2d 33.

■■ As a general rule, where the voluntary nature of a confession is in issue, the State must produce all material witnesses connected with the taking of the statement or explain their absence. *People v. Armstrong* (1972), 51 Ill. 2d 471, 476, 282 N.E.2d 712.

In the case at bar the State presented three witnesses who testified that defendant was not coerced into confessing to the armed robbery. All material witnesses to the confession were produced except for Investigator Lewis whose absence was adequately explained.[2] While it may have

---

[1] During trial, defense counsel conversed with Lewis by phone, and by stipulation this conversation was reported to the jury. Defense counsel told the jury that Investigator Lewis stated that during the interview with defendant at the time of his arrest she heard him say that he "took" the victim's money, but did not hear him say that he "robbed" her.

[2] The "material witness rule" is designed to assist the court in determining whether or not a confession is voluntary. If a trial judge is satisfied that a confession is voluntary, it is within his discretion not to require that all material witnesses be called. Such a decision by the trial judge will not be reversed absent a clear abuse of discretion. See *People v. Terrell* (1974), 18 Ill. App. 3d 911, 914, 310 N.E.2d 791, 794, *aff'd* (1975), 62 Ill. 2d 60, 338 N.E.2d 383.

been preferable to have had the benefit of Lewis' testimony, its absence in the circumstances of this case is not reversible error. Compare *In re Lamb* (1975), 61 Ill. 2d 383, 390-92, 366 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.

■■ The only specific contention defendant made concerning coercion was that he had been handcuffed for an extended period of time. This claim was refuted by Assistant State's Attorney Raphaelson. Further, it has been held that since at certain times it is necessary to leave a defendant alone, the use of handcuffs is not coercive per se. See *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 163, 376 N.E.2d 33.

We conclude that the State made a prima facie showing of the voluntariness of defendant's confession. Defendant produced no evidence to the contrary. The trial court's determination that defendant's confession was voluntary was not contrary to the manifest weight of the evidence, and its denial of defendant's motion to suppress such confession was not error.[3]

### III

Defendant's final contention is that comments made by the prosecutor and the trial court during closing argument were so prejudicial as to deny defendant his due process right to a fair trial. The prejudicial remarks allegedly made by the prosecutor were not specified in defendant's motion for a new trial. The State has correctly observed that a defendant's failure to specify the alleged errors in his motion for a new trial would permit this court to consider the issue waived. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ We note, however, that the central purpose of the waiver doctrine is to allow the trial court an opportunity to correct any alleged error. (*People v. Lain* (1980), 80 Ill. App. 3d 1136, 1137, 400 N.E.2d 1033.) In the instant case defendant's allegations of error were brought to the attention of the trial court by defendant's objections at trial. The trial court was thus made aware of the particular remarks of the prosecutor which defendant contends were improper. Defendant's claims of error were in this manner noted, and this court will consider the merits of defendant's claims. See

---

[3] Defendant also contended that he was prejudiced because the trial court denied his request for a postponement of the trial so that he could call Investigator Lewis to testify as to the voluntariness of defendant's confession. Defendant's motion was filed, as the trial court noted, after the jury had been selected and the trial was ready to begin. Investigator Lewis would not have been available for four to six more weeks.

Defendant was allowed to use the report prepared by Lewis in his cross-examination of the witnesses. Moreover, the assistant state's attorney and defendant entered into a lengthy stipulation, after defendant conversed with Lewis by phone, which stipulation was read to the jury. This stipulation removed any necessity for a continuance. Ill. Rev. Stat. 1979, ch. 38, par. 114—4(b)(3).

*People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462; *People v. Gray* (1977), 47 Ill. App. 3d 1026, 1032, 365 N.E.2d 501.

Defendant asserts that the prosecutor twice made improper remarks to the effect that defendant was lying when he testified. At one point during closing argument the prosecutor stated:

> "When [the defendant] took that stand and testified to you under oath, he committed perjury."

Defendant asserts that by this remark the prosecutor improperly gave his personal opinion that defendant was lying and accused defendant of a crime (perjury) other than that for which he was on trial.

The State maintains that any error in the comment was cured by defendant's prompt objection and the trial court's instruction to the jury to disregard such comment. In response to defendant's objection after a second remark that defendant was "lying," the trial court stated: "I believe that is a fair comment. Overruled."

■■ It is well settled that, although it is improper comment for the prosecutor to call the defendant a "liar," it is not prejudicial error if such characterizations were based upon evidence or were a reasonable inference which could be drawn from that evidence. *People v. Smith* (1977), 52 Ill. App. 3d 583, 590, 367 N.E.2d 756, *cert. denied* (1978), 436 U.S. 961, 57 L. Ed. 2d 1127, 98 S. Ct. 3079; *People v. Dotson* (1981), 99 Ill. App. 3d 117, 424 N.E.2d 1319.

In the instant case the testimony of the victim was in direct conflict with that of defendant. It is permissible for a prosecutor to comment upon facts and circumstances introduced into evidence at trial and upon legitimate inferences drawn therefrom. Moreover, the trial court's remark that "I believe that is fair comment" (that defendant lied) was an explanatory comment of the court's basis for its ruling on defendant's objection. As such, the court's comment did not unduly prejudice defendant. See *People v. Price* (1979), 76 Ill. App. 3d 613, 628, 394 N.E.2d 1256; *People v. Rojas* (1966), 68 Ill. App. 2d 171, 177, 215 N.E.2d 140.

Defendant further argues that the prosecutor improperly urged the jury that:

> "The buck stops right here. * * * You people of the community have to do something about this if you want this type of crime to stop."

It is not improper for the prosecutor to "dwell on the evil results of crime and urge a fearless administration of the law." (*People v. Wright* (1963), 27 Ill. 2d 497, 500-01, 190 N.E.2d 287.) Similar remarks have been found to be insufficient to require a reversal if based on the evidence. *People v. Rehbein* (1977), 54 Ill. App. 3d 93, 101, 369 N.E.2d 190, *aff'd* (1978), 74 Ill. 2d 435, 386 N.E.2d 39.

■■ Defendant complains of several other comments made by the

prosecutor in closing argument. We have examined these comments and note that in each instance after the prosecutor made the remarks complained of, the trial court sustained defendant's objections and instructed the jury to disregard such comments. While these measures may not always cure such comments, we do not think that here the prosecutor's comments, viewed in their proper perspective, were so prejudicial as to constitute a material factor in defendant's conviction. See *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233; *People v. Knowles* (1979), 76 Ill. App. 3d 1004, 1011, 395 N.E.2d 706.

Defendant also contends that the trial court during defense counsel's closing argument made remarks in support of the prosecutor's case which prejudiced the defendant. Defense counsel had stated:

"Adam [defendant] testified in this case. He didn't have to * * *. Was he impeached at all? * * * The State has the right to call people in rebuttal. Did they call anybody to the stand to say that anything Adam said was not true?"

Following an objection by the prosecutor to this statement by defense counsel, the trial court remarked:

"The State did produce the complaining witness who told a story inconsistent with the defendant's and there was no other witness present at the time of the occurrence, so that is an improper argument."

Defendant argues that this statement by the trial court was "wrong" because rebuttal witnesses did in fact exist. Defendant does not, however, identify any of these purported witnesses, and the record does not indicate the presence of any such witness to the occurrence. Thus it is clear that the remark of the trial court, heretofore quoted, was in response to defense counsel's closing argument and explained the court's ruling on the prosecutor's objection.

Defendant further contends that the trial court during the prosecutor's rebuttal made improper comments regarding the testimony of Investigator Richards. Richards had testified that he went to defendant's home approximately one week before defendant was arrested. While at defendant's home, Richards spoke with defendant's grandparents and asked them if defendant resided at home and if defendant was in fact at home at that time.

In closing argument defense counsel had argued that the fact that defendant was residing at home indicated defendant's innocence:

"* * * Just as it is the actions of an innocent man to drive with his license plates, to register them to his home, to live at his home. After Richards says he's been there to tell his parents that they are looking for him, that's what Richards said. He went there and talked to his grandparents and *he told them that he was looking for*

*him,* and what does he do? Adam is living there. That's what Adam is doing. That's the conduct of an innocent man. Not a man who committed a crime." (Emphasis added.)

In rebuttal the prosecutor argued:

"Mr. Monico then discussed the * * * actions of an innocent man. He said the police had been to Adam's house a week prior, and Adam is an innocent man. The actions of an innocent man. *If he was so innocent* [why didn't he] *say hi, are you looking for me—?"*

DEFENDANT: Objection.

THE COURT: *That's invited comment.* * * * *He said he told him we're looking for him."* (Emphasis added.)

The court overruled defendant's objection.

In this instance the trial court was merely restating what defendant had already told the jury regarding Richards' testimony. The court did not express a personal opinion concerning the credibility of such testimony, and its remarks did not indicate any prejudice to defendant. See *People v. Hine* (1980), 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017.

Moreover, the court instructed the jury that through its rulings the court was expressing no opinion as to what the facts were, and that it was the jury's duty to determine the facts. (Illinois Pattern Jury Instructions, Criminal, No. 1.01 (2d ed. 1968).) Such an instruction sufficiently alleviates any prejudice that the trial court's comments may have caused. See *People v. Pittman* (1973), 55 Ill. 2d 39, 61, 302 N.E.2d 7; *People v. Price* (1979), 76 Ill. App. 3d 613, 628, 394 N.E.2d 1256.

■■ For improper comments by the prosecutor or the trial court to be sufficient to merit reversal they must be of a substantial magnitude when viewed in light of the entire record and argument. (*People v. Martinez* (1977), 45 Ill. App. 3d 939, 943, 360 N.E.2d 495; *People v. Odum* (1972), 3 Ill. App. 3d 538, 279 N.E.2d 12.) Improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432.) Where the improper comments do not constitute a material factor in the conviction or are of such a minor character that prejudice to the defendant is not their probable result, the verdict will not be disturbed. *People v. Martinez* (1977), 45 Ill. App. 3d 939, 943; *People v. Berry* (1960), 18 Ill. 2d 453, 165 N.E.2d 257.

After carefully reviewing the record in the case at bar, we conclude that the remarks made by the prosecutor and the trial court during closing argument were not so prejudicial as to constitute reversible error.

Accordingly we affirm the convictions of defendant.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.