(No. 22705.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MIKE MARTORANO, Plaintiff in Error.

*Opinion filed February 15, 1935.*

NORTHUP & BEARDSLEY, for plaintiff in error.

OTTO KERNER, Attorney General, ELMER MOHAN, State's Attorney, and J. J. NEIGER, for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

Mike Martorano, also known by the names of Sberna and Sperno, was convicted in the circuit court of LaSalle county of robbing, while armed, the First National Bank of Ransom and was sentenced to the penitentiary. The cause is here on writ of error.

The robbery occurred October 25, 1932, in the daytime, and was participated in by several men, some of whom were armed. Within a short time six of the men were captured. Five entered pleas of guilty and were sentenced to the penitentiary. The sixth prisoner, Joe Rino, refused to plead guilty and was held in the county jail. The defendant had been previously employed by the William J. Burns Detective Agency as an "informer." He had connections with certain criminal characters and had rendered efficient service in the detection and arrest of bank robbers. In that line of business he had done work in LaSalle county, where he lived prior to his going to Chicago. A. R. Lapitz, an assistant manager of and an investigator for the Burns Detective Agency and also connected with certain investigations in behalf of the State's attorney's office of Cook county, directed the investigations of the robbery of the Ransom Bank and other banks in LaSalle county and vicinity. The sheriff of LaSalle county came into possession of information which led him to suspect the defendant of being a participant in the Ransom Bank robbery. The sheriff went to Chicago and reported the fact to Lapitz, who communicated with the defendant. As a result of this communication Lapitz learned that the defendant did participate in the crime, and, after negotiations concerning im-

munity, the defendant surrendered himself to the sheriff and was taken to the LaSalle county jail. A plea in bar, claiming immunity from prosecution, was filed and a demurrer to it was sustained. The defendant also filed a plea of not guilty, and a trial resulted in his conviction.

The demurrer to the plea in bar was sustained on the theory that under the provisions of section 3 of division 13 of the Criminal Code (Smith's Stat. 1933, chap. 38, par. 731,) all defenses may be shown under a plea of not guilty. That section provides that "upon the arraignment of a prisoner, it shall be sufficient, without complying with any other form, to declare orally, by himself or his counsel, that he is not guilty; which plea shall be immediately entered upon the minutes of the court by the clerk, and the mention of the arraignment and such plea shall constitute the issue between the people of the State and the prisoner." For many years it has been held in this State that this provision dispenses with all other pleas and forms and permits all meritorious defenses to be made under the plea of not guilty. (*Hankins* v. *People,* 106 Ill. 628; *People* v. *Brady,* 272 id. 401; *People* v. *Simos,* 345 id. 226.) We do not wish to depart from the well established and wise rule of practice announced in those decisions, but we recently held in *People* v. *Bain,* 358 Ill. 177, that the statute does not prohibit the filing of a special plea in bar, and that there are instances, particularly when an issue of law is tendered, which will justify the filing of a special plea, and that such a rule will often promote prompt disposal of cases and save the time of courts and litigants.

While the demurrer to the special plea presented a question of law, the court nevertheless heard testimony upon the facts averred by the plea before sustaining the demurrer. A motion to quash the indictment was overruled. The grounds for the motion to quash were stated in writing, and were, that the defendant, through his representative, Roy Lapitz, agreed to surrender to the authorities of

LaSalle county, through its sheriff, pursuant to an agreement entered into between the sheriff and Lapitz; that the terms of the agreement were that the defendant was to make a confession of his participation in the robbery of the Ransom Bank, which confession was to be used, before trial was had, to aid the sheriff in his dealings with another defendant; that in consideration of the surrender of the defendant and his confession for the use of the law-enforcing authorities of LaSalle county, the sheriff would see that the defendant would be sentenced to not more than one year in the county jail in LaSalle county; that the sheriff had authority to make such agreement in behalf of the law-enforcing authorities of said county; that pursuant to said agreement the defendant surrendered himself to the sheriff and made a confession; that subsequent to the promise of the sheriff to Lapitz the sheriff reiterated his promise to R. C. Saunders, chief of the protective department of the Illinois Bankers Association, who was engaged in the protection of banks against robbery and in the arrest and conviction of bank robbers; that the sheriff also made such promise directly to the defendant; that the defendant afterwards testified as a witness for the State against the other defendant; that said other defendant was convicted upon the testimony of this defendant, and that, notwithstanding the promises made by the sheriff, the defendant has already been incarcerated in the county jail of LaSalle county for more than one year.

In support of the above motion Lapitz was examined in open court and gave oral testimony to prove the various grounds set out in support of the motion to quash the indictment. In addition, he said that after the bank robbery he went to LaSalle county and talked to the sheriff. He also talked to Rino at the jail. The men who had entered pleas of guilty to the robbery were unwilling to testify against Rino. The sheriff told Lapitz he suspected the defendant, and Lapitz replied it was hard to believe. How-

ever, he and the sheriff went to Chicago that night. The next day Lapitz confronted the defendant with the charge of complicity. The defendant acknowledged he was implicated in the robbery and asked Lapitz if anything could be done for him. Lapitz then went to the hotel where the sheriff was stopping and reported what he had learned. He suggested to the sheriff that a confession might be obtained from the defendant, whereupon the sheriff replied that "if he will help me convict Rino I will see if I can get him a year in the county jail." The sheriff returned to his home and the next day Lapitz and the defendant had a conversation in which the former said he thought he could get the defendant a year in the county jail provided he would help the sheriff convict Rino. The defendant replied, "I want to be sure of that, because I do not want to go to the penitentiary." The witness said, "We will make it sure." Lapitz further testified that he then called the sheriff by telephone, and in that conversation the sheriff promised that "we will give him a year if he will come and help with Rino." The witness then asked the sheriff, What about the State's attorney? The sheriff replied, "Well, that is all right; you won't have to worry about that." After this conversation ended Lapitz called the State's attorney's office of Cook county and talked with C. Wayland Brooks, who was at that time an assistant State's attorney and knew of the efforts of Lapitz to run down bank robbers. Brooks was told the situation and advised Lapitz to make the agreement "iron-clad." After this conversation Lapitz telephoned the sheriff to come to Chicago and he would produce the defendant. The sheriff did as requested, and at Lapitz's apartment the agreement was once more reiterated in the presence of the defendant. The defendant testified at length concerning his conversations with Lapitz, the sheriff, and also the then State's attorney of LaSalle county, concerning promises to him of immunity or partial immunity. The sheriff, as a witness, denied he

ever made a promise of partial immunity to Lapitz or to the defendant. He admitted, however, that he placed the defendant in the cell with Rino and talked to him almost every night about whether Rino would enter a plea of guilty. He admitted that Lapitz did say to him that the defendant was ready to surrender if he could get "some sort of a break." He admitted that he brought three of the robbers back from the penitentiary to testify against Rino and that they refused to do it, and that the defendant, at his request, testified against Rino. The trial judge, in overruling the motion to quash, said he did not believe the sheriff made any promises to the defendant, but added: "My impression is that probably Mr. Welter told this man he would go the limit for him and do everything he could to make the burden light for him, but I don't believe he told him he would get immunity for him and that he had communicated with the former State's attorney."

After the motion to quash had been overruled and the demurrer to the plea in bar had been sustained, Brooks, who was no longer an assistant State's attorney of Cook county and who had appeared in order to represent the defendant in the disposition of the motion to quash and the special plea, withdrew as counsel for the defendant. This was on December 9 and the cause was set for trial on December 11. Clyde Mitchell, who had theretofore been appointed by the court to defend, asked for a continuance because of insufficient opportunity to prepare; also because the special plea and the motion to quash had been prepared by Brooks, and until his withdrawal Mitchell was of the opinion he would not be required to prepare and conduct the defense. A continuance was asked for a sufficient length of time to make preparation. The court indicated he would deny the motion, whereupon Mitchell asked leave to withdraw from the case, saying he did not care to defend one who does not want his services and does not trust him. The court denied the motion

for continuance and appointed Taylor Wilhelm to assist Mitchell in the trial. A jury was called and sworn to answer questions. At this juncture both of defendant's attorneys joined in a motion for continuance, and Wilhelm filed an affidavit in which he asserted his inability to make a proper defense because of lack of preparation and knowledge of the case. This motion was denied.

The evidence heard by the jury on the question of the defendant's guilt consisted almost entirely of the sheriff's recital of the confession made by the defendant. Proper objections were made as to the admission of the confession, but they were overruled by the court. At the close of the testimony for the People the defendant moved to exclude the evidence and for a directed verdict. This motion was denied. Before the jury retired, a motion was made, supported by the affidavit of Wilhelm, asking that the trial be carried over until the next day in order to procure the attendance of R. C. Saunders, the head of the protective department of the Illinois Bankers Association, who would testify that the sheriff had promised immunity to the defendant. Saunders was then out of the State and could not be availed of as a witness on the previous days of the trial but could and would be on hand the next day. The affidavit also stated that Lapitz had been sick but that his testimony could be procured the next day. During the hearing of this motion Wilhelm received a telegram from Saunders stating that he could be present on December 16. The motion to postpone the hearing was overruled.

The jury returned a verdict of guilty and concluded it as follows: "We, the jurors, recommend leniency." Motions for a new trial and in arrest of judgment were made and immediately overruled. One hundred and twenty days were allowed in which to file a bill of exceptions. Counsel for the defendant then moved for a stay of *mittimus* during such period, and that motion was overruled. The defendant is now in the penitentiary.

It seems to us that the testimony and the facts and circumstances in evidence conclusively demonstrate that the confession and testimony of the defendant in the trial against Rino was obtained upon the sheriff's definite promise of partial immunity. In the interest of justice the testimony of Saunders and Lapitz should have gone to the jury. These men were actively engaged in the suppression of crime. Their particular business was to prosecute bank robbers. They could have had no other interest in testifying except to see that the defendant received fair play. Good faith and the dignity of the State require that sheriffs and State's attorneys who make such bargains shall keep the faith. In *People* v. *Rockola,* 339 Ill. 474, we said that "where, in pursuance of a promise of immunity, an accused or witness has testified and by his testimony given incriminating evidence against himself, the State will be required to live up to the bargain as to immunity, and a conviction of the defendant of such crimes as his testimony discloses cannot be sustained."

Even if it may be said the trial court was not in error in sustaining the demurrer to the special plea in bar which set up the immunity, still, as a matter of evidence, the confession of the defendant, obtained under the circumstances it was, should have been excluded. The trial court expressed the belief that the defendant was told by the sheriff that he would go the limit and do everything he could to make the burden light for the defendant. Confessions obtained by such means are not voluntary and are not admissible in evidence. This rule has been so often announced it is unnecessary to cite authorities in support of it. If the confession had been excluded, as it should have been, no competent evidence would have remained in the record tending to prove the charges laid in the indictment. The situation warrants a reversal of the judgment.

*Judgment reversed.*