People of the State of Illinois, Defendant in Error, v. Marcus Payton, Plaintiff in Error.

Gen. No. 50,038.

First District, Third Division.

March 9, 1967.

Rehearing denied March 30, 1967.

Sherman Carmell, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Jay J. Poole, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Marcus Payton and a codefendant, Theodore Lewis, were indicted for the crime of armed robbery. They were tried by a jury and convicted. While testifying in their own behalf they admitted that they had served prior prison sentences for robbery and, upon the judgment of guilty in this case, Payton was sentenced to a term of 40 years to life and Lewis from 50 years to life in the penitentiary.

This appeal is by Payton alone. He contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt, that improper remarks were made by the trial court in ruling upon objections and that an inflammatory argument was made by the prosecutor. He

also complains that an admission made by him was treated as an oral confession and that because of this he was denied due process of law in violation of the Fourteenth Amendment to the Federal Constitution. The appeal was first taken to the Supreme Court but was transferred here with the finding that the court had no jurisdiction on direct appeal.

About 9:15 a. m., on March 21, 1960, the Cyril Lounge located in the Cyril Hotel, Chicago, was robbed by two men wearing handkerchief masks. The men, armed with automatic pistols, herded the customers against a wall and directed the bartender to unlock the door to a storeroom. When the bartender said he could not open the door, two customers were forced to tear the door from its hinges. One robber took the bartender into the room, obtained $212.27 which was in two metal boxes and placed the boxes in a cardboard box.

While the robbery was in progress a janitor, who had seen two men standing on the rear stairway earlier that morning, looked into the lounge and saw a customer with his hands raised in the air. He told the hotel's switchboard operator what he saw and she notified the police.

The police responded to the call at once; they entered the front door of the lounge a moment after the robbers departed through the rear door. After hurriedly obtaining their description the police pursued them and within two or three minutes captured two men answering the description. The men had the proceeds of the robbery in their possession, carried guns which were identified as being those used in the robbery and wore clothing identical to that worn by the robbers.

The men, Payton and Lewis, were recognized as patrons of the lounge; Lewis was a regular customer and Payton had been there once or twice before. They were identified by the janitor as the two men, then unmasked, whom he had seen on the back stairway before the robbery.

54

At his trial Payton testified that he and Lewis were drinking wine, which he said he had bought at the lounge that morning, in the alley back of the lounge when they noticed two men place a box under a porch at the rear of the lounge and run away. He said he and Lewis investigated the box and found that it contained a quantity of money and two guns; they were returning to the alley with the cardboard box when they were arrested. He denied committing the robbery.

The defendant claims that the evidence was wholly insufficient to establish his guilt. He points out that no witness identified him as one of the robbers, and that the case against him rests on circumstantial evidence. He stresses the fact that Lewis had a physical deformity— a hump on his back—which should have made him readily identifiable if he had been one of the robbers and that, as a regular customer Lewis' voice should have been known to the bartender and other habitues of the lounge, but that no witness recognized Lewis' voice or said that either robber had a hump on his back.

 This argument is more pertinent to Lewis than to the defendant and Lewis' conviction was affirmed in a separate appeal, People v. Lewis, 60 Ill App2d 462, 210 NE2d 586 (1965). The defendant was at the scene of the crime minutes before it took place and was apprehended fleeing from the scene minutes after it took place. He had in his possession the property taken in the robbery. He had in his pocket a gun used in the robbery. He had on clothes which duplicated those worn by one of the robbers. His explanation for these incriminating circumstances was disbelieved by the jury. The evidence, although circumstantial, was more than sufficient to remove all reasonable doubt of his guilt.

The chief trial error urged by the defendant for the reversal of this cause is that an oral admission supposedly made by him was construed as a confession by the court and so treated by the State. In presenting

55

its case the State referred to only one statement taken from the defendant and this pertained to the gun found in his possession. In cross-examining the policeman who testified about this statement, the defendant's attorney inquired whether the defendant had been asked other questions. The witness replied that he had asked both defendants if they would like to give a statement but they refused. The attorney persisted; he asked this question and received this answer.

"Q. In their refusal, did they deny committing the holdup?

"A. No, contrary. They admitted the holdup to me orally."

The defendant argues that this admission was equated with a confession and that this prejudiced him and resulted in the denial of due process of law. The error alleged and the argument in support of it are difficult to understand. Seemingly, they are based on observations made by the court outside the presence of the jury to the effect that what was said to the officer was a confession, and on the use of the word "confession" by the prosecutor in his final argument. But the court instructed the jury that testimony as to an oral admission should be received with great caution; and the prosecutor in using the word "confession" coupled it with the word "admission." Moreover, it would not have been error if the oral admission had been treated as a confession because the admission amounted to a confession: it was a direct acknowledgment of guilt by the admission of the ultimate fact—the commission of the robbery. People v. Sleezer, 9 Ill2d 57, 136 NE2d 808 (1956). Furthermore, the admission was elicited by his own counsel on cross-examination and, if the answer be regarded as responsive, he cannot complain of an answer responsive to his question. People v. Realmo, 28 Ill2d 510, 192 NE2d 918 (1963). If the answer be regarded as not responsive, he cannot benefit because there was

no objection to the answer and no motion was made to strike it. In addition, the defendant never claimed, and does not now, that he was coerced by the police in an attempt to obtain a confession. A confession or admission is admissible without preliminary proof where no objection is made that it is involuntary. People v. Hurry, 385 Ill 486, 52 NE2d 173 (1944).

■ The defendant next complains about the comments made by the trial judge when he ruled upon objections to questions asked by the defendant's attorney. The attorney, in cross-examining a State's witness, implied by the form of his questions that he had information which differed from the witness' testimony. A question might begin with the words "Isn't it a fact that?" and end with an alleged fact contrary to what the witness had testified. This happened on three or four occasions and the State objected unless the attorney intended to prove the contrary fact. The court overruled the objections but remarked on each occasion that he assumed the attorney knew the rule: that when he asked questions framed in this fashion he was required to prove what he had intimated was the truth. The defendant argues that there is no such rule and that the court's comments placed the burden of proof upon him and might have led the jury to believe that he was required to prove his innocence.

The attorney's method of interrogation was one that is commonly used in probing for the truth and it is unobjectionable if done in good faith and if the examiner is prepared to back up the implication incorporated in his questions. Too often, however, an examiner will assume something in his questions which is neither based on evidence nor likely to be introduced into evidence. He thus succeeds in implanting suspicion in the jury's mind by innuendo. This practice substitutes insinuation for proof and is highly improper.

57

 Because the defendant's attorney asked questions which suggested that the truth was otherwise than testified to by the witness, the court was justified in admonishing him as it did. People v. Irish, 77 Ill App2d 67, 222 NE2d 117 (1966). It would have been better if the admonishments had been made outside of the jury's hearing, but no burden of the State was shifted to the defendant by the court's comments and we do not think they could have led the jury to believe that the State no longer had the duty to prove him guilty beyond a reasonable doubt.

Finally, it is claimed that inflammatory argument by an assistant State's attorney denied the defendant a fair and impartial trial. Exception is taken to the following:

> "This case is a robbery. But it goes to my mind far beyond a simple robbery. It goes beyond a man going in with a gun and stealing money. . . . It goes to the question of whether a man can run a store . . . without having the fear of having someone come in and take away his property or his money or his goods or even his life. . . . It is up to people like you to determine whether or not a woman can walk from a bus stop to her own home in this city without having the fear of being assaulted or whether a man and wife can walk to a park without being beaten and abused. Ultimately it is up to you people to decide just what kind of law enforcement we are going to have in this city. You people rightfully say to the police, why don't you stop these rapes and beatings. Why don't you stop these beatings."

We agree with the defendant that the latter part of this argument was out of place; the defendant was being tried for robbery not for assault or rape. However, we do not agree that the argument was prejudicial. Then too, no objection was made to the latter part of the argu-

58

ment. An objection to an allegedly prejudicial argument will not be considered on appeal unless the objection was first made at the time of the trial. An exception to this rule is when an argument is so prejudicial that it prevents a defendant from receiving a fair trial. The argument in the present case does not come within this exception. People v. Morgan, 20 Ill2d 437, 170 NE2d 529 (1960) ; People v. Moore, 9 Ill2d 224, 137 NE2d 246 (1956).

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.