THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES D. JONES, Defendant-Appellee.

(No. 55838; )

First District—November 28, 1972.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel,) for the People.

No appearance for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This is an appeal by the State from an order sustaining the motion of defendant James D. Jones to suppress statements alleged to have been made by him to an assistant State's Attorney and subsequent testimony which he gave before the grand jury. To fully understand the issue involved it is desirable to set forth facts relating to the crime and subsequent events.

James Jones and Robert Banks were charged on January 27, 1970, with the murder of a security guard at a restaurant known as Burger King, located at 103rd and Forest Streets in Chicago. Jones was identified as the man who accompanied Banks to the restaurant where the two ordered soft drinks and seated themselves at a table next to one at which two security guards were sitting. The restaurant manager testified that Banks left Jones and sat down at the table with the guards. After a few minutes conversation Banks pulled a gun and shot Mason, one of the guards. Both defendants ran out, followed by Mason who fired two shots,

wounding Jones. Mason then collapsed and died. The defendants were arrested, indicted by the grand jury, and the case set for trial.

On November 9, 1970, the first day of trial, the State requested and was granted leave to amend its list of prospective witnesses to include three who had been witness to statements made by Jones to an assistant State's Attorney named Robert Beranek. Seymour Fishman, Jones' attorney, was then asked by the assistant State's Attorney if he intended to file a motion to suppress these statements and Jones' testimony before the grand jury. Fishman stated that he would wait to see how the prosecution developed before making a final decision on this point. After several witnesses had testified for the State the case was continued to November 16, 1970. Upon reconvening, the State sought to introduce in evidence statements made by Jones to Beranek on April 15, 1970 and the grand jury testimony. Fishman moved to suppress both on the grounds that they were made as a result of a promise of leniency made by Beranek and hence were not made voluntarily. The trial judge ordered a preliminary hearing on the matter.

At the hearing Beranek testified that Fishman had first suggested to him that Jones might testify for the State, and he had told Fishman that upon such testimony being given he would not oppose a motion to sever, and would be inclined to recommend leniency for Jones. Beranek testified that at no time did he state what this more lenient recommendation would be. Beranek further stated that Fishman had agreed that he and Jones would meet in Beranek's office on April 15, 1970 to hear Jones' statement. Fishman did not attend the meeting but spoke to Jones and Beranek that day by telephone and, prior to any questioning, Jones was allowed to use Beranek's telephone to talk to Fishman.

Beranek also testified that he informed the defendant of his constitutional rights; that he heard Jones tell Fishman he wanted to give the statement; that Jones told him Fishman had agreed; and Beranek then informed Fishman that Jones would be taken before the grand jury that day, to which Fishman had no objection. He testified that after the grand jury appearance he processed Jones' request to be transferred to another penal institution.

Fishman testified that Beranek had instigated inquiries as to Jones' testifying for the State, and that on April 9, 1970, Beranek offered Fishman severance and probation if Jones pleaded guilty and testified for the State. Fishman introduced his trial jacket on the Jones case, and translated a shorthand notation contained thereon as stating the State's Attorney's office had called and offered severance and probation. Fishman further testified that during the conversation on April 15 he had asked Beranek if the "deal" was still on and Beranek replied that it was.

He stated that was the reason he agreed to have Jones give a statement and appear before the grand jury. On cross-examination Fishman admitted that he rarely made notations on his criminal file jackets and that he knew probation could not be given for murder. On redirect, however, he testified that he knew it to be a common occurrence for a murder charge to be lowered to a lesser offense to which probation could be given.

Defendant Jones testified that on about April 10, 1970, Fishman told him that Beranek had offered probation if he testified for the State. He further testified that on April 15 Beranek told him that if he testified he would get probation, or if he did not he could get 40 to 50 years; that Fishman had told him that day that the "deal" was still on; and that he gave the statement because he did not want to go to the penitentiary for 40 to 50 years. On cross-examination he admitted that he was advised of his constitutional rights prior to making the statement and before his grand jury appearance.

The trial court found that Beranek's testimony showed a promise of reward was made to Jones while the latter was sitting in Beranek's office without the aid of counsel, that the statement and grand jury testimony were tainted by such promise and were therefore inadmissible. The State was then granted permission to strike the case with leave to reinstate, and this appeal was taken by the State pursuant to Ill. Rev. Stat. 1969, ch. 110A, par. 604 (a) (1).

The issue before the court is whether the trial court acted properly in suppressing the statement made to the assistant State's Attorney and the subsequent testimony given by defendant before the grand jury. It should be noted at the outset that the defendant has failed to file a brief in this appeal by the State. There is authority that in such case a judgment may be reversed *pro forma.* (*Algozino v. Police Board of City of Chicago,* 111 Ill.App.2d 34; *Beinarauskas v. Beinarauskas,* 90 Ill.App.2d 381; *People v. Spinelli,* 83 Ill.App.2d 391.) The better view, however, is that such cases should be disposed of on the merits. (*Daley v. Jack's Tivoli Liquor Lounge, Inc.,* 118 Ill.App.2d 264; *Lynch v. Wolverine Insurance Co.,* 126 Ill.App.2d 192.) In view of the serious charge against the defendant we will proceed to a determination of the merits of the appeal.

■■ Admonitions to tell the truth and advisements to make statements are not considered sufficient in themselves to render a statement involuntary. (*People v. Hartgraves,* 31 Ill.2d 375.) However, promises of leniency or immunity, either partial or total, will render statements given in consideration of such promises not voluntary and not admissible. (*People v. Martorano,* 359 Ill. 258.) No one factor can be relied upon in determin-

ing the voluntariness of a statement, but such must be determined from all the circumstances surrounding its making. (*People v. Bey*, 45 Ill.2d 535.) It is possible that, although threats or promises may have been made, the evidence as a whole shows that a statement was made voluntarily and is therefore admissible in evidence. (*People v. Lettrich*, 413 Ill. 172.) This determination, however, is for the trial court to make. *People v. Joe*, 31 Ill.2d 220.

A reviewing court will not disturb such a finding unless there is a showing that it is contrary to the manifest weight of the evidence. (*People v. Daily*, 41 Ill.2d 116; *People v. Ackerson*, 37 Ill.2d 117; *People v. Worley*, 37 Ill.2d 439; *People v. Joe*, 31 Ill.2d 220; *People v. Spencer*, 27 Ill.2d 320.) In the case before us it is clear from the entire record that the finding was not against the manifest weight of the evidence.

Whether the alleged offer in question was made was an issue for the trial court to decide. The testimony on this point was in sharp conflict. Beranek's admission that he had told Fishman he would not oppose a severance and would be inclined to recommend leniency if Jones testified, can be taken as showing at least that some bargaining was going on between the parties, and would thus lend support to defendant's version of the events. The fact that the defendant had been fully apprised of his constitutional rights before making his statement is immaterial to the question of its voluntariness if he had been previously promised a reward for the giving of such a statement. In appellant's brief, great reliance is placed upon the fact that the defense attorney knew that probation could not be given on a charge of murder, tending to discount the attorney's credibility concerning the events involved. However, it was explained on redirect that it is common knowledge among members of the criminal bar that such charges can be and are reduced in order to make a sentence of probation possible.

It is our conclusion that there was ample evidence, depending on whom the trial court believed, to allow or deny the motion to suppress, and this finding will not be disturbed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.