THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY McCUE, Defendant-Appellant.

Second District   No. 76-30

Opinion filed April 25, 1977.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Loren S. Golden, State's Attorney, of Mt. Carroll (Phyllis J. Perko and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with theft of property not exceeding $150, and found guilty after a bench trial. He appeals, contending that (1) the court erred in refusing to suppress certain statements made by defendant at the conclusion of a polygraph examination, and (2) the defendant was improperly sentenced to both imprisonment and restitution. The exact terms and nature of the sentence are in dispute.

On August 10, 1975, Lyle Toepfer, manager of the Checker service station in Savanna, Illinois, opened the station's cash drawer and then went out on the driveway and began waiting upon customers. Defendant and one Jim Anderson were also at the station. As he worked, Toepfer observed the defendant sitting at the desk where the cash drawer was located. Customers and other persons were observed outside the station, but the defendant was the only person seen inside the station in the vicinity of the cash drawer. During the time Toepfer was outside, Anderson, though not a Checker employee, was also on the driveway, helping Toepfer by pumping gas and wiping windshields. After a while, the defendant came out to the driveway, got change for a dollar from Anderson, walked across the street to another gas station, bought a beverage from a vending machine, and then left the area. When, after half an hour, Toepfer checked the cash drawer $52 to $55 in coins were missing. Toepfer called the police, and Officer Daupin responded. The officer asked Anderson if he had any money, and Anderson pulled out his billfold and went through his pockets, demonstrating that he had no coins on his person. The officer did not look inside the billfold. Later that day, Daupin questioned the defendant in front of his home. The defendant's father was present during this questioning. The officer advised the defendant of his *Miranda* rights, and asked him about the theft at the Checker station. The defendant apparently denied his guilt, and stated that he was willing to take a polygraph test.

On August 26, 1975, the State's Attorney sent the defendant a letter stating that he had arranged for a polygraph test at 11 a.m. on September

11, 1975, at the sheriff's office. The defendant appeared on that date, and voluntarily submitted to a polygraph examination, which was conducted by Nicholas J. Reiland, a polygraph examiner for the State of Illinois. Reiland and the defendant were alone in a room during the test. Reiland assured the defendant that he was not a police officer, told him that his rights "were still in effect," and that "he didn't have to take the polygraph test, that it was up to him entirely." The test was then administered. When it was over, Reiland told the defendant that he had "flunked" the examination. The defendant replied, "What, you got to be kidding, I didn't take the money." Reiland indicated that he didn't believe the defendant. After further discussion, the defendant admitted the theft. The incriminating statement was made 15 minutes to one-half hour after the conclusion of the polygraph examination. After this conversation, Reiland accompanied the defendant to the State's Attorney's office, and the defendant then went home. On the next day, the defendant was charged with the offense and arrested.

The defendant's motion to suppress his confession was denied. Reiland testified at trial that on September 11, 1975, the defendant admitted taking the money. The rest of the State's evidence was entirely circumstantial, and consisted solely of the testimony of Lyle Toepfer. James Anderson was the only witness called by the defendant, but his testimony was inconclusive. Since Toepfer and Anderson admitted that they had not actually seen the defendant take the money, Reiland's testimony was critical to the State's case.

■■ The defendant attacks the trial court's refusal to exclude his confession, on a number of grounds. He asserts that Reiland's failure to administer *Miranda* warnings mandated the exclusion of his subsequent statements. The Supreme Court's holding in *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711, is dispositive of this question. The facts in *Mathiason* were, in many respects, very similar to those in this case. The defendant in *Mathiason* made an appointment to come to the police station, as defendant McCue did here. In both cases the defendants voluntarily appeared at the station and answered questions. In each case defendants, although free to leave at any time, continued to answer questions until they ultimately confessed. In *Mathiason,* the Supreme Court held that the defendant's freedom of action was not restricted during or after the interrogation; that he was not "in custody", or otherwise deprived of his freedom in any significant way, and that *Miranda* warnings were therefore unnecessary. (50 L. Ed. 2d 714, 719.) The court noted in particular, in support of its holding, that the defendant had been able to depart without hindrance at the conclusion of the interview. Such was also the case here, and it is clear that, in light of *Oregon v. Mathiason*, Reiland's failure to give *Miranda* warnings was not

fatal to the admissibility of the defendant's subsequent confession. See also *People v. Roberson* (1977), 46 Ill. App. 3d 750.

■■ The defendant argues that his confession was inadmissible, since the circumstances surrounding the interrogation were "improperly coercive." This argument was not raised at the suppression hearing, at trial, or in defendant's post trial motion, in any manner whatsoever, and was therefore waived—*e.g., People v. Irwin* (1965), 32 Ill. 2d 441; *People v. Pickett* (1973), 54 Ill. 2d 280.

■■ Even if this issue were properly before us, defendant's argument would not survive close scrutiny. A key contention of the defendant is that he suffers from a "mental deficiency" which made him highly vulnerable to coercive influences. However, the only evidence heard below on the defendant's mental condition was his own statement that he had completed 2½ years of high school, and then obtained his diploma through home study. This is hardly indicative of "mental deficiency."

The only basis for defendant's contention is an impression recorded by the probation officer in the presentence report. However, the report also indicates that the defendant was no stranger to the processes of criminal justice, having been arrested and charged on seven prior occasions. His conversation with Reiland lasted only 15 to 30 minutes after the conclusion of the polygraph examination. Reiland never threatened him, and in fact, exhorted him not to say anything "unless it was true." The defendant had had more than adequate time to obtain counsel, prior to the interview. During the examination and subsequent conversation, the defendant was free to depart at any time. Instead, he chose to remain and argue with Reiland after Reiland told him that he had flunked the examination. Thus, the factors which have moved courts to hold confessions the product of coercion, are lacking in this case. Compare *People v. Sims* (1946), 395 Ill. 69 (defendant, a 17-year-old girl, kept in custody for five days without being charged, and forced to submit to a lie detector test against her will).

The defendant has also alleged that his confession was the product of improper promises made by Reiland. The defendant claimed that Reiland told him, "You wouldn't go to jail or anything because its your first offense." This was denied by Reiland, but Reiland admitted on cross-examination that he may have told the defendant that his theft "probably was a spur of the moment thing because you are unemployed," and that "if everybody that took a little money was locked up the jails would be overflowed." The defendant testified that it "seemed to him" that Reiland was promising him that he wouldn't go to jail.

■■ This particular contention was not specifically raised by defendant's counsel in the suppression motion, at trial, or by post trial motion, and the State has argued that the point was therefore waived.

However, the matter of Reiland's alleged promises was directly raised in defendant's testimony and in defense counsel's cross-examination of Reiland and we therefore consider the point. *People v. Richard* (1975), 34 Ill. App. 3d 621, 625.

■■■ Promises of leniency or immunity render the statements given in consideration of such promises involuntary, and therefore inadmissible. (*People v. Martorano* (1935), 359 Ill. 258, 265.) However, admonitions to an individual to make a statement or tell the truth, such as Reiland's request of this defendant, do not render the statement involuntary. (*People v. Jones* (1972), 8 Ill. App. 3d 849.) Here, the defendant was aware, at the time of Reiland's statements, that Reiland was neither an assistant State's Attorney nor a police officer. He thus lacked both apparent and actual authority to make any promise to the defendant regarding the outcome of his case. Further, neither of the remarks that Reiland admitted making could reasonably be understood to constitute anything beyond Reiland's personal opinion or prediction. In view of these facts, and the defendant's considerable prior criminal experience, Reiland's statements cannot be held to have rendered the defendant's confession involuntary. See *People v. Gunn* (1973), 15 Ill. App. 3d 1050.

Finally, the defendant argues that the court ordered him to make restitution in addition to sentencing him to a term of imprisonment, and that it was error for the court to impose both imprisonment and restitution. The judgment and sentence "sentences" the defendant "to imprisonment in the Carroll County Jail" and "fixes the term of imprisonment at ten days and two years' probation and a $50 fine, restitution and court costs." Although the judgment and sentence thus, on its face, seems to support defendant's contention that he was sentenced to a term of imprisonment, the State argues that the provision requiring the defendant to spend 10 days in the county jail was a condition of probation, and not a sentence. The State cites the order granting probation, which clearly treats the requirement that the defendant spend ten days in the Carroll County Jail as a condition of probation, rather than a sentence.

Orders of restitution are valid only as a condition of probation or conditional discharge, and may not be imposed in addition to imprisonment for a misdemeanor. (*People v. Breen* (1976), 62 Ill. 2d 323; *People v. Ondrey* (1975), 32 Ill. App. 3d 73, *rev'd in part, on other grounds,* 65 Ill. 2d 360; *People v. Verdich* (1976), 44 Ill. App. 3d 737.) However, section 5—6—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(b)(10)), expressly authorizes courts to make restitution a condition of probation, and the same section authorizes the court to impose a period of imprisonment as a condition of probation. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3(d)); *People v. Mercer* (1976),

41 Ill. App. 3d 1051, 1054.) The validity of the trial court's judgment in the instant case thus turns upon the question of whether the court's requirement that defendant spend ten days in the county jail was a "sentence" or a condition of probation.

■■ On appeal, the judgment of the trial court is presumed to be correct. (*People v. Rockett* (1967), 85 Ill. App. 2d 24, 32.) Where a trial court's sentence is capable of alternate constructions, courts of review will favor a construction under which the sentence is lawful, over a construction rendering the sentence unlawful or invalid. (See *People v. Marchese* (1975), 32 Ill. App. 3d 872, 885.) Here, it is reasonable to presume that the trial court intended to sentence the defendant in accordance with, rather than contrary to, the applicable statute. The court's judgment and sentence must be construed together with the probation order entered immediately afterward. When this is done, it becomes evident that the court intended the defendant's stay in the county jail to constitute a condition of probation, rather than a sentence, and this is the construction which we give the judgment and sentence. Thus construed, the sentence is clearly valid.

The judgment of the circuit court of Carroll County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.