THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ERNIE SLAUGHTER, Defendant-Appellant.

First District (5th Division)    No. 77-489

Opinion filed April 7, 1978.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James Veldman, and Maria C. Cabrera, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of murder and burglary and sentenced to 100 to 300 years imprisonment. The sole question presented for review is whether the trial court erred in denying defendant's motion to suppress his post-arrest statements.

It appears that a fingerprint of defendant was found at the scene of a murder and, as a result, police officers Scott and Murphy went to the apartment building where he resided. They saw him in the first floor breezeway of the building and made an arrest about 11:30 p.m. The *Miranda* warnings were read, and defendant stated he understood them. He was then taken to a police station, where he was placed in an interview room with one hand handcuffed to a restraining ring. At approximately midnight, he was again given the *Miranda* warnings by Scott, who stated that defendant, after each sentence was read, replied that he understood it. Thereafter, Scott informed defendant that his fingerprint had been found at the scene of the murder, and within 10 to 20 minutes defendant gave an oral statement concerning the crimes. At this point, both officers left the room, informing defendant that they would have to consult with an Assistant State's Attorney. Scott returned at approximately 1 a.m. with an Assistant State's Attorney named Williams and a court reporter.

Defendant was read the *Miranda* warnings for the third time, and he again acknowledged his understanding of them. His written statement was then taken and, at the close of the statement, Williams asked a question as follows: "No threats or promises were made to you, is that true?" Defendant replied, "Yes, one promise. They said they might let me go and all that."

Scott and Murphy also testified that although they knew defendant was 17 years of age at the time of his arrest, they made no attempt to contact his parents until after the oral and written statements were made; that the interview room had a large glass window, through which the room and its occupants could be observed from the homicide office; that they were either in the homicide office or in the interview room while defendant was there; and that during the time defendant was left alone in the interview room, no one else entered it.

Williams testified that when he first saw defendant at 1 a.m., he appeared alert and relaxed and that after he took the statement from defendant, no attempt was made to further question him concerning the answer he made that "they might let me go and all that." However, Williams, Scott, Murphy and the court reporter testified that none of them made any promise to defendant, used physical force against him, threatened him or observed anyone else doing so. Defendant did not testify or present any evidence at the suppression hearing.

Opinion

Defendant's sole contention is that the trial court erred in denying the motion to suppress. He argues that the following facts support his position that the State did not establish the voluntariness of his statements: (1) that defendant said in the written statement that a promise had been made that "they might let me go and all that"; (2) that his statement concerning the promise was not immediately challenged by either Scott, Murphy or Williams—all of whom were then present; (3) that during his interrogation in the police station, his left hand was handcuffed to a ring secured to a wall in the interview room; and (4) that the police did not contact his parents until after the statements were taken, although they knew he was 17 years of age.

■■■ Before an out-of-court statement may be used, even for impeachment purposes, the State must establish by the manifest weight of the evidence its voluntary character. (*People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.) When the State makes a *prima facie* showing that a confession was voluntary, the burden shifts to the defense to produce evidence that the confession was involuntary and reverts back to the State only upon such production. (*People v. West* (1975), 25 Ill. App. 3d 827, 322 N.E.2d 587.) Where a statement is given in consideration of promises

of leniency or immunity, it is not voluntarily given and is therefore inadmissible. (*People v. Peck* (1974), 18 Ill. App. 3d 112, 309 N.E.2d 346.) However, even though threats or promises may have been made, if the evidence as a whole shows that a statement was made voluntarily, it is admissible. (*People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305.) The credibility of the witnesses and the weight to be given their testimony are questions for the trial court (*People v. Patton* (1975), 33 Ill. App. 3d 923, 339 N.E.2d 22), and a court of review will not disturb the trial court's determination as to the voluntariness of defendant's statement absent a showing that it is contrary to the manifest weight of the evidence (*People v. Maxon* (1976), 35 Ill. App. 3d 670, 341 N.E.2d 479).

■■ ■ Here, Scott, Murphy, Williams, and the court reporter testified that no promise of leniency was made to defendant. Scott and Murphy further testified that from the time of his arrest until his written statement was given, defendant was either in their presence or left alone in the interview room of the police station under their observation, and that no one else spoke to him except in the presence of one of them. During oral argument before this court, defendant argued that the vigilance of the officers' observation could have faltered momentarily, at which time another might have entered the interview room and promised leniency. This argument is speculative and must fall in the face of the officers' testimony. Furthermore, in effect, it is a contention that the State failed to produce a material witness and, as such, must be rejected on appeal because defendant did not contend during the course of the suppression hearing that there was a failure to produce material witnesses. See *West*.

■■ Thus, the central issue is the weight to be given to the testimony of the State's witnesses, that the *Miranda* warnings were read to and acknowledged by defendant on three separate occasions and that a promise of leniency was not made to him when that testimony is considered in the light of defendant's statement that they might let him go. Credibility of the witnesses and the weight to be given their testimony are matters for the trial court (*Maxon; Patton*) and, upon the evidence before it, we believe the trial court could properly have found that no promise of leniency had been made to defendant. Furthermore, since defendant did not testify at the hearing, the record is devoid of any evidence as to whether the promise was made before or after he gave the oral statement or whether the oral and/or written statements were given in consideration of the promise. Thus, it appears to us that defendant's statement, indicating a promise was made to him, standing alone is insufficient to raise the question of involuntariness. *West*.

While it is true that during oral argument in this court the State admitted in hindsight that it may have been prudent for Williams to have

questioned defendant further regarding the promise, it also argued that defendant was not prejudiced by the failure to do so. We agree. The purpose of convening a hearing on a motion to suppress is to clarify the record. This was accomplished by the State here from the testimony of the police officers, the court reporter, and Williams that no promises were made. Defendant did not see fit to assist the clarification process and, under the circumstances, we find no prejudice to him solely because the State did not ask additional questions when defendant's statement was made.

■■■ We next consider the significance of the use of handcuffs and of defendant's age. He has cited no authority for the proposition that the use of handcuffs is coercive *per se*. Custody alone has never been viewed as sufficient to demonstrate coercion (*United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820) and, because it was apparently necessary to leave defendant alone from time to time, we do not believe that the use of a handcuff amounted to coercion. Concerning the question of defendant's age, we know that he was 17 years old—which is considered to be an adult age for purposes of criminal prosecution. (Ill. Rev. Stat. 1975, ch. 37, par. 702—7; ch. 38, par. 6—1.) Moreover, "juveniles are not free from police investigation and * * * the failure to have a parent or guardian present during questioning of a juvenile does not necessarily render statements made at that time inadmissible. [Citations.]" *In re Bizzle* (1976), 36 Ill. App. 3d 321, 326, 343 N.E.2d 633, 638.

In the light of the foregoing, we conclude the finding of the court that defendant's statements were voluntarily given is not against the manifest weight of the evidence, and the judgment is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.