THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN WOODBURN, Defendant-Appellant.

Fourth District   No. 15356

Opinion filed August 22, 1979.

CRAVEN, J., dissenting.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Following an October 23, 1978, bench trial in the circuit court of McLean County, defendant John Woodburn was convicted of burglary and sentenced to a term of 6 years' imprisonment. On appeal, he contends that the State failed to prove that a confession given by him and introduced at trial was voluntary and that he was denied due process at his sentencing hearing because of an unfulfilled promise by the State.

The evidence reveals that defendant and his brother were apprehended by police at approximately 12:20 a.m. on June 27, 1978, near a Normal car wash which had been the subject of a burglary. The two individuals were found to be in possession of coin boxes taken from the car wash and were shaking the money out of those boxes. Upon being confronted by a police officer, defendant threw the box he held and ran, only to be later apprehended. The thrown box struck the arresting officer.

A pretrial hearing was conducted on defendant's motion to suppress his written statement implicating himself and others in the car-wash burglary and several other similar offenses. At the close of the hearing, the

trial court found the statement to have been voluntarily given. The statement was also later introduced by the State in its case in chief.

Charles Crowe, a detective with the Bloomington Police Department, testified at the hearing to having received the statement at issue from defendant. According to Crowe, after giving the defendant his *Miranda* warnings and defendant's agreeing to talk with him, he asked defendant if he, defendant, would answer some questions regarding past crimes in the Bloomington-Normal area, and defendant responded affirmatively. Thereafter, defendant discussed various burglaries with Crowe including the underlying offense here, implicating himself and others. Crowe asked defendant questions concerning these offenses and reduced the questions and defendant's answers to a typewritten statement consisting of three pages. Defendant did not sign the statement because, according to Crowe, he did not want those he implicated therein to see his name on the statement.

Crowe testified that after the giving of the statement, he took copies thereof to the State's Attorney who, after reviewing the same, decided to file no charges in addition to the burglary charge against the defendant, largely because additional convictions would likely result in concurrent sentences. Crowe stated that at no time did he make any promises to defendant concerning the latter's agreement to give the statement and also stated that he had not told defendant that because he made the statement he would not be charged with aggravated battery stemming from the incident during which the arresting officer was struck. He stated that he had only told defendant that he, Crowe, would present the facts to the State's Attorney and it would be up to the latter as to what charges would be brought against defendant.

Defendant's testimony at the suppression hearing directly contradicted that of Crowe in several regards. He stated that Crowe had initially offered to help him in return for his aid in clearing up some past burglaries. Later, according to defendant, after Crowe had told him that he would be charged with burglary and assault and battery, the detective spoke of the possibility of dropping the latter charge, left the room momentarily to make a telephone call, and, upon his return, stated that if defendant agreed to give a statement, he would be charged with neither assault and battery nor any other crime that might be mentioned in the statement. Defendant stated that he would not have given Crowe the statement but for the promise to drop the assault and battery charge.

On rebuttal, Crowe again denied making any promise to defendant in return for the latter's statement.

■■ An out-of-court statement by an accused may be used by the State only upon proof of its voluntary nature. (*People v. Lefler* (1967), 38 Ill. 2d

216, 230 N.E.2d 827.) Statements induced by promises of leniency or immunity have been held to be thereby rendered involuntary. (*People v. Martorano* (1935), 359 Ill. 258, 194 N.E. 505; *People v. McCue* (1977), 48 Ill. App. 3d 41, 362 N.E.2d 760.) However, even in cases involving threats or promises, where the evidence as a whole establishes the voluntary nature of an accused's statement, those statements have been held to be admissible. (*People v. Slaughter* (1978), 59 Ill. App. 3d 159, 376 N.E.2d 33; *People v. Jones* (1972), 8 Ill. App. 3d 849, 291 N.E.2d 305.) The voluntariness of such a statement need only be proved by a preponderance of the evidence (*People v. Jackson* (1968), 41 Ill. 2d 102, 242 N.E.2d 160), and a trial court's finding of voluntariness will be upheld on review unless contrary to the manifest weight of the evidence. *People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170; *Jones.*

■ As noted by the State, the determination of voluntariness by the trial court hinged largely on that court's assessment of the credibility of Detective Crowe and the defendant. Both could not have been believed. Determination of that credibility was a question for the trial court.

Defendant argues that while cross-examining him during the suppression hearing, the prosecutor admitted that promises had been made by Crowe to defendant in return for his statement and that such lends support to the conclusion that the statement given was involuntary. The verbatim account of this cross-examination, in context, is as follows:

"Q. Isn't it a fact that you were told by Detective Crowe that you would be released from custody that day if you told him all about these burglaries?

A. No.

Q. Isn't it a fact that Detective Crowe told you that you would never go to the penitentiary if you tell him things, and it's all going to be in his hands?

A. No.

Q. Isn't it a fact that Detective Crowe told you that all the crimes that you told about in this statement other than the car wash burglary you would not be charged with?

A. Yes.

Q. In other words he told you that if you tell everything, you won't be charged with anything but that car wash burglary, isn't that correct?

A. Yes.

Q. And that's why you told everything because you wanted a pass on everything, is that right?

A. Pardon me?

Q. You wanted a pass on everything? You wanted to get the benefit of the bargain?

A. Right."

A number of cases have pronounced a rule that if an attorney cross-examines a witness with a question which implies that a fact not in evidence is true and the witness denies the existence of the fact asserted, the question is unfair if the cross-examiner is not in a position to produce proof that the implied fact is true. If the fact is denied and no such proof is subsequently offered, the cross-examiner "thus succeeds in implanting suspicion in the jury's mind by innuendo. This practice substitutes insinuation for proof and is highly improper." (*People v. Payton* (1967), 82 Ill. App. 2d 51, 57, 227 N.E.2d 87, 91; see also *People v. Moore* (1973), 54 Ill. 2d 33, 294 N.E.2d 297; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161; *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.) However, no case has been called to our attention which holds that by asking such a question without connecting evidence, an examiner binds his client to the truth of the implied fact.

The *Payton* opinion stated that the cross-examiner there "implied by the form of his question that he had information which differed from the witness' testimony" (82 Ill. App. 2d 51, 57, 227 N.E.2d 87, 91). The theory is presented here that the prosecutor either (1) bound the State to the position that the matters inferred in the questions were true, or (2) must have been in bad faith, and that we cannot assume the latter. If this were so we would be required to conclude that Crowe promised to have assault and battery charges dropped if defendant confessed to the burglary charges.

■■ That the prosecutor here intended to implant "suspicion" adverse to the defendant in the mind of the trier of fact "by innuendo" would appear to be improbable because, unlike in the cited cases, the implications of the questions were favorable to the defendant. Moreover, as the questions were asked during a motion to suppress heard at bench, the opportunity to have influenced the trier of fact by the form of the question was minimal. The defendant made no objection to any of the questions and made no request that the prosecutor be required to offer connecting testimony. Thus it is not logical to assume that the prosecutor acted in bad faith in asking the questions if the inferred facts were not true. Rather, it is more likely that the prosecutor was unaware of the rule and was using the form of questioning to clarify the position of the defendant as to what promises were or were not made to him.

■■ Viewing the entire record, we cannot conclude that the trial court's finding that defendant's statement was voluntarily given was contrary to the manifest weight of the evidence.

Defendant's other contention on appeal stems from the trial court's

use of and reference to the aforesaid statement in imposing sentence. As previously noted, that statement implicated defendant in various other crimes. Defendant asserts that the trial court's reference to those other crimes prior to imposing sentence breached his agreement with the State that evidence of those crimes as derived from his statement would not be used against him. However, having determined that the trial court could properly have found that no promise was made to defendant in return for his statement, we need not rule on this point.

Accordingly, defendant's conviction and sentence are affirmed.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The prosecutor, in cross-examining the defendant, used the form of question set forth in the majority opinion, saying, "Isn't it a fact that * * *." In the course of that cross-examination, by his questions, the prosecutor asserted as true that (1) Detective Crowe told the defendant that he would be released from custody if he told all about "these burglaries" and (2) that Detective Crowe told the defendant that he would not be "charged with the other burglaries if he told about the car wash burglary, that he would not be charged with anything else if he told about the car wash burglary" and, finally (3), the questioner asserted as a fact, in the form of a question, that the defendant told about everything else because he wanted "a pass" on everything. He told everything because he wanted the benefit of "a bargain." It is the rule that such form of questioning is permissible, but such form is objectionable unless the asserted fact is true and known by the questioner to be true. If it was untrue, such tactic would be planting untruths by innuendo. As was stated in *Payton*, such method of interrogation is unobjectionable if done in good faith *and* if the examiner is prepared to back up the implications incorporated in his questions. I am not prepared to believe that the questioning was not done in good faith. Assuming, as we must, that the questioning was in good faith, then the matter asserted as true must be taken as true. It is manifestly unfair and contrary to a fair proceeding to have the State now deny that there was a bargain, to deny that there was a promise of leniency, to deny the existence of the motive for talking. Indeed to deny as true all that the prosecutor described as, "Isn't it a fact that," is manifestly unfair.

The evidence of the defendant's guilt in this case is rather overwhelming. In view of that fact, the unfairness used can be cured by vacating the enhanced penalty imposed because of the evidence of the

numerous criminal activities other than the car wash burglary. Such enhanced penalty breached the bargain and this the State is precluded from doing. See *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495.

I would vacate the sentence and remand for the imposition of a new sentence before a different judge since it seems unwise to ask that the trial judge who heard the evidence impose a new sentence and forget that which he heard in the prior proceeding.